```
IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF TEXAS
            DALLAS DIVISION
```

SALIM I. SINDHI,                     §
                                     §
                Plaintiff,            §
                                     §  Civil Action No. 3:15-CV-3229-D
VS.                                  §
                                     §
KUNAL R. RAINA,                      §
                                     §
                Defendant.            §

## MEMORANDUM OPINION AND ORDER

Plaintiff Salim I. Sindhi ("Sindhi") moves for modification of an interlocutory permanent injunction and for entry of final judgment, and for an order to show cause why defendant Kunal R. Raina ("Raina") should not be held in contempt. Raina moves to overturn the default judgment in this case and for admission of evidence or clarification of prerequisites for admission. For the reasons that follow, the court denies Raina's motion to overturn the default judgment, grants Sindhi's motion for an order to show cause, and defers a ruling on Sindhi's motion for modification of the permanent injunction and for entry of final judgment until the court conducts an evidentiary hearing. The court denies as moot Raina's motion for admission of evidence or clarification of prerequisites for admission.

I

This is an action by Sindhi against Raina for copyright infringement under 17 U.S.C. §§ 501-505, and for violating the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.002-005 (West Supp. 2016). Sindhi formerly employed

Raina as a manager for his online newspaper content management system ("CMS") business, bulletlink.com. Sindhi alleges that Raina stole bulletlink.com CMS source code, trade secrets, and other confidential information to create a substantially similar competing CMS called "TechCruiser." TechCruiser's business is described as a "software licensing and delivery model in which software is licensed on a subscription basis and is centrally hosted." D. Mot. Overturn Default Judg. 4-5. TechCruiser's website is interactive and includes a "Buy Now" page, which allows customers to sign up to license Raina's software, without any apparent restrictions based on geography. Raina maintains in his motion to overturn default judgment that "Defendant Raina's company TechCruiser Solutions has clients from all over the globe including some from Texas." *Id.* at 5. Sindhi alleges, and Raina does not dispute, that Raina licensed TechCruiser software to two Dallas-based online newspapers, *White Rock Lake Weekly News* and *Katy Trail Weekly*, for at least 43 months and 29 months, respectively.[1] Sindhi filed a copyright registration for bulletlink.com CMS source code with the U.S. Copyright Office on September 21, 2015. Raina, an Indian national and permanent resident of India, was served with this lawsuit through Hague Service Convention on June 2, 2016.

---

[1]Exhibits that Sindhi submitted in support of his motion to modify the permanent injunction show that Raina includes *Katy Trail Weekly* under the "Our Featured Clients" section of the TechCruiser website. Both the *Katy Trail Weekly* and *White Rock Lake Weekly* sites display "Powered by TechCruiser" in the footer of their site pages. Sindhi calculates that *Katy Trail Weekly* licensed TechCruiser software from November 2014 to March 2017 and accounted for $1,131.00 of TechCruiser's business. Sindhi also estimates that *White Rock Lake Weekly* licensed TechCruiser software from September 2013 to March 2017 and accounted for $1,677.00 of TechCruiser's revenue.

On June 21, 2016 Raina filed a motion to dismiss for lack of jurisdiction. On September 29, 2016 the court issued two orders. One stated that Raina's counsel had not been admitted to practice before the court and required that his counsel apply for admission to the Bar or for admission *pro hac vice* within 21 days. The other stated that Raina must provide the clerk of court a certificate of interested persons within 21 days. Raina failed to comply with both orders.

On October 24, 2016 the court filed two more orders. One order stated that, if Raina failed to file the required certificate of interested persons within 14 calendar days, the court would strike Raina's responsive pleadings and enter a default judgment without additional prior notice. The other stated that, if Raina did not comply with the court's September 29, 2016 order regarding counsel, the court would strike his responsive pleadings and enter a default judgment without additional prior notice. Raina failed to comply with these two orders.

On November 8, 2016 the court filed an order striking Raina's responsive pleadings, including his motion to dismiss for lack of personal jurisdiction, on the basis that he had "repeatedly failed to comply with orders of this court after having been advised of the consequences of such failure." Nov. 8, 2016 Order at 1. The court in the same order entered an interlocutory default judgment against Raina. On November 21, 2016 the court entered a permanent injunction against Raina,[2] but the permanent injunction did not address all the

---

[2]The court permanently enjoined Raina, TechCruiser, and "all other persons in active concert with him who receive actual notice of this injunction" from "possessing, publishing,

relief that Sindhi seeks in this case, and was therefore an interlocutory, not final, judgment.

No further proceedings took place in this court until April 4, 2017, when Sindhi moved to modify the permanent injunction and for entry of a final judgment. He seeks damages in the sum of $1,469,494.00 and attorney's fees in the sum of $56,255.17.[3] Sindhi asks the court to modify the permanent injunction, *inter alia*, to clarify the injunction's applicability to various third parties providing services to Raina based on Sindhi's trade secrets.

On April 24, 2017 Raina filed a motion to overturn the default judgment. Raina seeks to overturn the interlocutory default judgment under Fed. R. Civ. P. 60(b)(4)[4] on the basis that it is void for lack of personal jurisdiction. He maintains that he does not have

---

disclosing or utilizing in any for or for any purpose the trade secrets, including the source coded . . . that Raina misappropriated[.]" Permanent Injunction at 1.

[3]Sindhi requests actual damages of $734,747.00, the sum of $84,747.00 in unjust profits, and unjust enrichment of $650,000 through use of Sindhi's CMS source code and trade secrets, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 134A.004(a). He also asks the court to award exemplary damages of two times his actual damages based on Raina's willful and malicious misappropriation, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 134A.004(b).

[4]Raina contends in the alternative that the interlocutory default judgment should be set aside under Rule 60(b)(1), (5), or (6). The court concludes below that Raina has failed to show "mistake, inadvertence, surprise, or excusable neglect," as required by Rule 60(b)(1), because his contacts with the state of Texas should reasonably have put him on notice that he could be haled into a Texas federal court. Nor has Raina shown "the inequity of the continuing operation of a judgment" under Rule 60(b)(5). *See Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980). Finally, Raina has not shown "extraordinary circumstances" that call for relief under Rule 60(b)(6). *Evenson v. Sprint/United Mgmt. Co.*, 2011 WL 3702627, at *4 (N.D. Tex. Aug. 23, 2011) (Fitzwater, C.J.) (quoting *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002)).

constitutionally sufficient minimum contacts with the forum state, and that Sindhi is estopped from showing that this court has personal jurisdiction over him because Sindhi has previously represented to Indian courts that his cause of action arose in India. On April 30, 2017 Sindhi filed a motion for order to show cause why Raina should not be held in contempt. On August 9, 2017 Raina filed a motion for admission of evidence or clarification of prerequisites for admission.

II

The court turns first to Raina's motion to overturn the default judgment under Rule 60(b)(4).

A

The court will treat Raina's motion as one to set aside the November 8, 2016 order entering an interlocutory default judgment. The interlocutory permanent injunction entered on November 21, 2016 did not purport to be a final judgment, and even Sindhi, by moving now for entry of a final judgment, seems to recognize that the court has not as yet entered a final judgment in this case. *See* P. Mot. for Modification of Permanent Inj. and Entry of Final J. at 14 ("Sindhi asks the Court to enter the Proposed Modified Permanent Injunction and to enter the Proposed Final Judgment.").

B

Under Rule 60(b)(4), a judgment can be set aside if it is void. "[R]elief from judgment is available if the district court lacked subject matter or personal jurisdiction, or if the court acted in a manner inconsistent with due process of law." *Salazar v. Owens-Ill.*

*Salary Emp. Welfare Benefits Plan*, 2010 WL 454900, at *1 (N.D. Tex. Jan. 26) (Sanderson, J.) (citing *Callon Petrol. Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003)), *rec. adopted*, (N.D. Tex. Feb. 10, 2010) (Fitzwater, C.J.).

The Fifth Circuit has not resolved the question of which party bears the burden of proof on a Rule 60(b)(4) motion. *See Jackson v. FIE Corp.*, 302 F.3d 515, 521 n.6 (5th Cir. 2002) (declining to "choose a side in the split of authority on this question"); *compare Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986) (holding defendant with notice who elects to suffer default judgment must bear burden of showing lack of personal jurisdiction), *with Rockwell Int'l Corp. v. KND Corp.*, 83 F.R.D. 556, 559 (N.D. Tex. 1979) (Porter, J.) (placing burden on plaintiff because no reason exists to "reverse the normal placement when a party challenges the existence of In personam jurisdiction through a Rule 12 motion to dismiss"). Here, regardless who has the burden of proof, Raina cannot succeed on his Rule 60(b)(4) motion to overturn the default judgment because the evidence preponderates in favor of the finding that the court has personal jurisdiction over him.

C

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. *See Ham v. La Cienega Music, Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant.[5] If it does, the court next resolves whether

---

[5]Sindhi has invoked this court's federal question jurisdiction to sue Raina for copyright infringement under 17 U.S.C. §§ 501-505, and this court's supplemental

the exercise of personal jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Raina would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court' in the forum state."

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A defendant's minimum contacts with the forum may support either specific or

---

jurisdiction to sue for a violation of TUTSA. When jurisdiction is founded "upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, [Rule 4] requires that the state's standard of amenability to jurisdiction apply." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983) (addressing former Rule 4(e)) (following *Burstein v. State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982)). The Copyright Act does not provide for nationwide service of process. *Tomelleri v. MEDL Mobile, Inc.*, 657 Fed. Appx. 793, 794 (10th Cir. 2016). "[W]hen a plaintiff invokes federal question jurisdiction and serves process under a state long-arm statute, a federal court can assert jurisdiction only if the state court could have done so." *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1371 (5th Cir. 1986).

general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. For the court to properly exercise specific personal jurisdiction, the defendant must have "purposefully directed" his activities at residents of the forum, and the litigation must result from alleged injuries that "arise out of or relate to" the defendant's activities directed at the forum. *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

When specific jurisdiction is based on online interactions via an Internet website, the court determines purposefulness of contacts based on the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa.1997). *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01 & 900 n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336). The *Zippo* scale spans three levels of interactivity of a defendant's website: where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Mink*, 190 F.3d at 336 (interpreting *Zippo*). While interactivity is a significant factor in determining purposeful conduct when personal jurisdiction is based on Internet contacts, "internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the

nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012).

D

The court now considers whether it may exercise personal jurisdiction over Raina, limiting its analysis to whether Raina's contacts support the exercise of specific jurisdiction. Because Sindhi's claims are related to Raina's contacts with the state, the court need only address whether the purposefulness of Raina's contacts meets the constitutional minimum contacts requirement.[6]

Raina's contacts with the state of Texas are based entirely on the sales made through the TechCruiser website. Raina does not deny that he has sold TechCruiser software to at least two Dallas-based customers. Instead, Raina contends that having "merely online contacts" with the forum does not support personal jurisdiction because he never made any in person business visits to Texas. He also posits that nothing in his contract with Sindhi—no choice of law provision, listing of the business location, or residences of the

---

[6]Raina maintains that the court cannot exercise personal jurisdiction over him because his allegedly tortious action was not directed at Texas. That is, he posits that Sindhi's claims of copyright infringement and stealing trade secrets are entirely separate from Raina's contacts with Texas. The court disagrees. Sindhi has established by a preponderance of the evidence that Raina is profiting from the allegedly stolen or copied source code through his sales to Texas customers. Thus his contacts with the state of Texas are related to Sindhi's claims of copyright infringement. *See Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074, 1077 (C.D. Cal. 1999) (holding that defendant's contacts and plaintiff's claim were closely related based on similar facts involving products sold online to forum state residents by defendant who incorporated technology of patent at issue).

parties—made it apparent that the contract would have a substantial connection with Texas.

The court is unpersuaded by Raina's arguments. Online contacts with a forum, even without in person visits or a contract substantially connected to the forum, can support the exercise of personal jurisdiction. *See e.g., Mink,* 190 F.3d at 336 (describing when court may exercise personal jurisdiction over defendant who operates Internet website without other contacts to forum state). TechCruiser's online contacts with Texas satisfy the constitutional minimum contacts requirement. First, TechCruiser has maintained at least two contractual relationships with Dallas-based customers that have continuously licensed TechCruiser software as part of their sites for multiple years. *See Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) ("The quality of the contacts as demonstrating purposeful availment is the issue, not their number[.]"); *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (noting that even single, non-unilateral contact can form a basis for specific jurisdiction).

Second, TechCruiser sits on the extreme of the *Zippo* interactivity scale that supports the exercise of personal jurisdiction. The site facilitated ongoing contractual relationships with two Dallas online newspapers that incorporated TechCruiser's software as part of their businesses. Furthermore, the interactivity of the TechCruiser site—specifically its "Buy Now" feature—distinguishes it from the "passive advertisement" website over which the Fifth Circuit declined to exercise personal jurisdiction in *Mink*. *See Mink*,190 F.3d at 337. In *Mink* the website provided only a printable mail-in order form, a toll-free telephone number, and an email address, but had no capacity for buyers to place online orders. *See id.*

By contrast, TechCruiser's "Buy Now" page appears to allow customers to purchase subscriptions to its software online, without any apparent restrictions based on geography. This case is therefore distinguishable from one in which a passive defendant merely lists an email address or telephone number or in which a third-party customer, on its own initiative, contacts the defendant to inquire about its willingness to transact business.

Raina's contention that the TechCruiser website has never specifically targeted Texas residents does not change the result under the *Zippo* analysis. And Raina acknowledges in his motion to overturn default judgment that "Defendant Raina's company TechCruiser Solutions has clients from all over the globe including some from Texas." D. Mot. Overturn Default J. 5; *cf. Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470-71 (5th Cir. 2006) (holding that court had personal jurisdiction where defendant's invoices indicated forum state as the destination, and concluding that businesses cannot claim ignorance of contents of their own orders).

The court therefore concludes that Raina could have reasonably anticipated being haled into court in Texas. *See World-Wide Volkswagen*, 444 U.S. at 297.

E

The court is similarly unpersuaded by Raina's argument that Sindhi is judicially estopped from establishing personal jurisdiction in this court because he asserted in Indian court cases that his cause of action arose in India.[7]

---

[7]Raina cites Sindhi's representation to an Indian court in his civil action against Raina that "the entire cause of this suit arose in Nashik i.e. within the jurisdiction of this court[.]"

Because this court has federal question jurisdiction, *see supra* note 5, it applies the federal law of judicial estoppel. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (citing *Johnson v. Or. Dep't of Human Res.*, 141 F.3d 1361, 1364 (9th Cir. 1998)) (action under Americans with Disabilities Act; "[f]ederal law governs the application of judicial estoppel in federal courts"); *see also Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) ("[G]enerally this Circuit considers judicial estoppel 'a matter of federal procedure' and therefore applies federal law."); *cf. Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst., Inc.*, 966 F.2d 1007, 1009 (5th Cir. 1992) (holding that when federal court jurisdiction is based on diversity, *Erie* governs and state law of res judicata applies). Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains*, 179 F.3d at 205 (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). It is an equitable doctrine, and the choice whether to invoke it lies within the district court's discretion. *See In re Coastal Plains*, 179 F.3d at 205.

When determining whether to apply judicial estoppel, the court looks to three factors: whether "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th

---

D. Mot. Overturn Default J. 12. He also cites Sindhi's description of the place of occurrence in the criminal case as Nashik.

Cir. 2011). "[T]he 'judicial acceptance' requirement 'does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *In re Coastal Plains*, 179 F.3d at 206 (citing *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988)).

2

Raina distinguishes the act of stealing the source code from the act of licensing the code to Texas customers in an attempt to show that Sindhi's assertion that the theft occurred in India precludes him from basing personal jurisdiction on where the code was licensed. But even if the court assumes *arguendo* that Sindhi asserted plainly inconsistent positions by first representing to Indian courts that his cause of action arose entirely in Nashik and later attempting to establish personal jurisdiction in this court based on Raina's contacts with the state of Texas, Raina has not shown that the Indian court accepted Sindhi's assertions. Although Raina succeeded in two of his claims, whether a party prevailed on the merits in the previous judgment is not dispositive of whether a court accepted a certain legal position. *See Reynolds*, 861 F.2d at 473. Raina has not presented sufficient evidence to support the finding that the Indian court relied on Sindhi's specific representation that the *entire* cause of action arose in Nashik in either a preliminary matter or final disposition.

For these reasons, equity does not require that Sindhi be estopped from representing

that this court has personal jurisdiction over Raina.[8]  The evidence shows that this court may properly exercise personal jurisdiction over Raina.

F

Raina has also failed to show that haling him into court in Texas would offend notions of "fair play and substantial justice."

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).  Raina "must present a 'compelling case' that jurisdiction is unreasonable and incompatible with 'fair play and substantial justice.'" *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 377 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *Burger King*, 471 U.S. at 477-78).  "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Id.* (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (alterations in original)).  Raina has not made the required showing of a compelling case.

Although Raina points to the general difficulty of foreign discovery, he does not

---

[8]The court has assumed *arguendo* that Raina's Indian court documents are admissible. Because the court holds that Raina has not prevailed in his judicial estoppel argument, even with the support of such documents, it need not determine their admissibility.  The court therefore denies Raina's motion for admission of evidence as moot.

- 14 -

present any compelling instances of inconvenience in this case. For example, he merely states that an Indian court is more competent to make factual determinations because Indian forensic labs possess the parties' hard drives. But he presents no evidence that a United States court would be ill-equipped to assess such evidence.

Similarly, Raina contends that an Indian court is better positioned to evaluate Sindhi's Indian copyright, but the claim before this court concerns Sindhi's United States copyright and the violation of United States and Texas law.

Raina also argues that Sindhi's filing of a civil suit in Texas following his two unsuccessful suits against Raina in India offend "traditional notions of fair play and substantial justice." But even if the court assumes that this circumstance bears upon the first factor—Raina's burden—it is insufficient when considered together with all the relevant factors to warrant the conclusion that the court cannot exercise personal jurisdiction over Raina.

Because Raina has not made the required showing of a compelling case, the court holds that it would not offend traditional notions of fair play and substantial justice to exercise *in personam* jurisdiction in this case.

III

Sindhi moves the court to enter final judgment for damages in the sum of $1,469,494.00 and attorney's fees in the sum of $56,255.17. Although the court upholds the interlocutory default judgment against Raina, it concludes that it must conduct an evidentiary hearing to determine damages. Accordingly, the court defers ruling on Sindhi's motion for

entry of final judgment for damages until a hearing is convened.

"As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). "[L]iquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law." *Super 8 Motels*, 2008 WL 878426, at *4 (D.N.J. Apr. 1, 2008); *see IBEW-NECA Sw. Health & Benefit Fund v. Heritage Specialities*, 2003 WL 21673487, at *1 (N.D. Tex. July 15, 2003) (Lindsay, J.) (awarding plaintiffs liquidated damages on default judgment where fund provided that liquidated damages are "equal to $20.00 or ten percent (10%) of unpaid contributions"). A sum capable of mathematical calculation is one that can be "'computed with certainty by reference to the pleadings and supporting documents alone,' rendering an evidentiary hearing unnecessary." *See James*, 6 F.3d at 311 (quoting *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992)).

Sindhi requests damages in the amount of $1,469,494.00. This amount is neither liquidated nor computable with certainty based on supporting documents. To award exemplary damages under Tex. Civ. Prac. & Rem. Code § 134A.004(a), the court must find by clear and convincing evidence that Raina's misappropriation was willful and malicious. *Id.* at § 134A.004(b). Sindhi has not carried this burden in his motion, and the court concludes that an evidentiary hearing is necessary to make such a determination.

Additionally, Sindhi's calculation of TechCruiser's unjust profits is based on an

estimated rate of $39.00 per month, which TechCruiser has not had an opportunity to contest. Similarly, Sindhi's estimate of unjust enrichment rests on a number of unchallenged assumptions.[9] A hearing is necessary to evaluate these variables.

* * *

Accordingly, for the reasons explained, the court denies Raina's motion to overturn the default judgment; grants Sindhi's motion for an order to show cause; defers a ruling on Sindhi's motion for modification of the permanent injunction and for entry of final judgment until the court conducts an evidentiary hearing; and denies as moot Raina's motion for admission of evidence or clarification of prerequisites for admission. By separate order filed today the court is setting a date for the show cause hearing and hearing on Sindhi's motion for modification of the permanent injunction and for entry of final judgment.[10]

**SO ORDERED**.

September 20, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[9] For example, Sindhi applies a 50% discount to his calculation of the money he invested in developing and maintaining his trade secrets and copyrighted materials to arrive at the amount of Raina's unjust enrichment.

[10] Because Sindhi's motions for modification of permanent injunction and for a show cause order make similar arguments, a combined hearing will be conducted.

- 17 -