IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALIM I. SINDHI | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-3229-D |
| KUNAL R. RAINA | § § § | |
| *Defendant.* | § | |

**SALIM I. SINDHI'S MOTION FOR ISSUANCE OF A PERMANENT INJUNCTION**

Plaintiff Salim I. Sindhi ("Sindhi") respectfully submits this Motion for the Issuance of a Permanent Injunction against Kunal R. Raina ("Raina"), his employees and agents, enjoining them from undermining or collaterally attacking the Final Judgment entered by this Court on November 6, 2017. Raina has recently filed a new action in India centered on the same allegations of theft of trade secrets and copyright infringement that were the subject matter of this litigation.

Sindhi requests that a permanent injunction be issued against Raina ordering him to dismiss his new Indian litigation and to take no further action with respect to that litigation or any other litigation against Sindhi and Bulletlink that would undermine or attack this Court's Final Judgment and Injunction.

**I.    Background**

Since 1999, Sindhi has done business in Texas under the name bulletlink.com ("Bulletlink"). The key asset of Bulletlink is a content management system ("CMS") developed by Sindhi that permits users to create and manage online newspapers. The source code used to run this CMS is considered a highly proprietary and confidential trade secret. In 2008, Sindhi hired Raina as a manager with access to the CMS source code. Raina stole the source code and other

valuable and highly confidential trade secrets related to the operations of Bulletlink from Sindhi. With these materials, Raina founded his own company, TechCruiser Solutions, which offers a pirated version of the Bulletlink CMS to customers in the online news industry.

Sindhi brought this action against Raina on October 5, 2015 for Copyright Infringement and violations of the Texas Uniform Trade Secrets Act. A brief history of the relevant events and orders of this Court is provided below to give context to Sindhi's request for an Antisuit Injunction.

## THE PERMANENT INJUNCTION

Following the entry of a default judgment, this Court issued a Permanent Injunction ("Permanent Injunction") on November 21, 2016 enjoining Raina from using Sindhi's Trade Secrets to operate TechCruiser and from accepting payments from customers for his CMS products or services. (Dkt. 30). Raina ignored the Permanent Injunction and moved his operations overseas to frustrate its enforcement. *Id*.

## ORDER TO SHOW CAUSE AND EVIDENTIARY HEARING

On September 20, 2017, the Court issued a Memorandum Opinion and Order denying Raina's motion to overturn the default judgment and ordering Raina to show cause for his violations of the Permanent Injunction at an evidentiary hearing on October 27, 2017. (Dkts. 59; 60). The Court issued a bench warrant for Raina's arrest when he failed to attend the hearing. (Dkt. 71). Raina's attorney was present at the hearing and cross-examined Sindhi.

## THE FINAL JUDGMENT AND INJUNCTION

On November 6, 2017, the Court issued a Final Judgment and Final Injunction awarding Sindhi $1,393,494 and enjoining Raina, individually and d/b/a TechCruiser.com and/or TechCrusier Solutions, his officers, agents, servants, employees, and attorneys, and all those in active concert or participation with him ("Enjoined Parties") from possessing, publishing,

2

disclosing, or utilizing the trade secrets, including the source code used to generate and operate the TechCruiser Content Management System ("CMS") that Raina misappropriated from Sindhi, individually and d/b/a bulletlink.com, as well as the customer lists, customer data, and business model that Raina misappropriated from Sindhi (collectively, the "Sindhi Trade Secrets"). (Dkt. 75).

The Enjoined Parties are also prohibited from using the services of "eUKHost.com, iomart.com, or any other webhost, PayPal.com, CCAvenue.com, or any other electronic payment processer, Google, Bing, Yahoo, or any other search engines, GoDaddy, bigrock.com, namecheap.com, enom.com, TuCows.com, networksolutions.com, register.com, icann.org, or any other domain name registrars, comm100.com, or any other live chat service, smtp.com, or any other email relay service, usamail1.com, or any other virtual mail service, and Facebook, Twitter, Google Plus, or any other social media outlet, service, or company to conduct, promote, advertise, or advance TechCruiser, TechCruiser Solutions, or TechCruiser.com." *Id*. The Enjoined Parties are also prohibited from providing any CMS products or services to a list of third-party newspaper publishers. *Id*. at 3.

### SINDHI'S COMMUNICATIONS TO THIRD-PARTIES ABOUT THE PERMANENT AND FINAL INJUNCTION

Sindhi notified many of TechCruiser's vendors and clients of the Permanent Injunction issued on November 21, 2016. He sent similar notice letters to the third-parties listed in the Final Injunction, including both TechCruiser customers who were using the TechCruiser CMS, and suppliers and vendors whose services helped to support TechCruiser's improper activities, informing them about the existence of the Final Injunction and asking them to comply with its terms. For example, Sindhi provided GoDaddy notice of the issuance of both the Permanent and Final Injunctions and asked GoDaddy to block or remove the internet domain name registration

associated with TechCruiser.com. Sindhi made similar requests of PayPal and other third-party vendors that Raina/TechCruiser were using in express violation of the Permanent Injunction and Final Injunctions.

## THE INDIA LAWSUIT

Raina filed an action against Sindhi in India on December 5, 2017 ("India Lawsuit") in which he alleged that the litigation filed in this Court was "frivolous." Further, Raina alleged that Sindhi's communications to third parties about the Court's Permanent Injunction were defamatory,[1] and asked for monetary damages for defamation based on the letters that Sindhi had sent to third-parties like GoDaddy and PayPal notifying them of the Permanent Injunction shortly after it issued on November 21, 2016. Raina also seeks an order enjoining Sindhi from communicating with TechCruiser's clients and business associates. *Id*.

The India Lawsuit represents a collateral attack on the Permanent Injunction, the Final Judgment, and the Final Injunction. At the same time that Raina launched his attack on the Final Judgment through the India Lawsuit, he simultaneously filed a Motion for New Trial in this Court (which this Court has denied, *see* Dkt. 81) and a Notice of Appeal with the Fifth Circuit. Raina has repeatedly demonstrated his unwillingness to comply with the terms of the Permanent and Final Injunctions. He is still offering his CMS system online in violation of both injunctions *more than a month after this Court issued a bench warrant for his arrest*. Raina is trying to interfere with enforcement of this Court's injunctions by securing an order from a court in India to bar Sindhi from communicating with others about this Court's orders. Accordingly, Sindhi hereby requests an order further enjoining Raina from pursuing the India Lawsuit.

---

[1] The India Lawsuit was filed in Civil Court Senior Division, Nashik, India bearing the caption *Kunal Raina v. Bulletlink Technologies and Parveen Salim Sindhi* (Registration No. 440/2017).

## II.     Legal Standard

The party requesting an injunction must typically show: (1) a substantial likelihood that the plaintiff will prevail on the merits, (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the injunction will not disserve the public interest. *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

The Firth Circuit has, however, recognized that this test is not particularly useful in the context of foreign antisuit injunctions. *Id*. at 364 (noting that because a foreign antisuit injunction is a "particular subspecies of preliminary injunction … we need not address all the factors that generally are prerequisites to obtaining a preliminary injunction."). Instead, the Fifth Circuit has held that "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions." *Id*. Accordingly, the Fifth Circuit examines whether the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles. *Commercializadora Portimex S.A. De Cv v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 649 (E.D. La. 2005) (*citing Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)).[2]

---

[2] Courts that consider the traditional injunction factors find that they favor issuance of the antisuit injunction, particularly when, like here, a final judgment has been issued. *See Commercializadora Portimex S.A. De Cv v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 653 (E.D. La. 2005) citing *New York Life Ins. Co. v. Deshotel*, 946 F. Supp. 454, 465 (E.D. La. 1996) ("Courts have repeatedly found that immediate and irreparable injury results from having to defend claims that should be barred.").

5

### III.     Argument and Authorities

Sindhi seeks to prevent vexatious and expensive serial litigation involving the same issues and to protect and effectuate this Court's Permanent Injunction, Final Judgment, and Final Injunction. Sindhi requests a permanent injunction prohibiting Raina, TechCruiser, and their principals and agents from maintaining the India Lawsuit and to enjoin Raina, TechCruiser, and their principals and agents from instituting and/or causing to institute any other actions against Sindhi or Bulletlink in any jurisdiction involving Raina's theft of Sindhi's Trade Secrets at issue in this litigation.[3]

Raina seeks a ruling in the India Lawsuit that Sindhi's letters to vendors and clients about the Permanent Injunction were defamatory. Ex. A at 12. He has also requested an order restraining Sindhi from sending any letters or communications to his clients and "business associates" in the future. *Id.* at 12. Such an order would undermine the Final Judgment and directly threaten this Court's jurisdiction. Raina has repeatedly shown that he will not abide by the terms of the Permanent or Final Injunctions prohibiting him from using the services of the third-parties listed in the Final Injunction to promote, advertise, and advance TechCruiser and providing CMS services to online newspaper publishers. Dkt. 75 at 2-3. However, many of these third-parties have willingly complied with the Final Injunction after receiving notice of it from Sindhi. An order preventing Sindhi from communicating with these or other parties would deprive Sindhi of one of the only available options of enforcing the Injunction.

Courts weighing antisuit injunctions must consider "the extent to which the foreign suit is duplicitous of the litigation in the United States." *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366

---

[3] To be clear, Salim is not seeking to restrict Raina from pursuing any proper appeal of the Court's Final Judgment. Rather, Salim is asking the Court to restrict Raina from filing new lawsuits, in India, the United States, or elsewhere, that have the effect of attacking the Final Judgment or attempting to prevent Salim from enforcing the Final Judgment.

(5th Cir. 2003). While Raina's employee, Abhijeet Bhausaheb Dighe, was added to the India Lawsuit, his presence in the India Lawsuit does not weigh against issuance of the Antisuit Injunction. Dighe was bound by the express terms of this Court's Permanent and Final Injunctions and Fed. R. Civ. P. 65(d)(2) as an employee, agent, and/or person acting in concert with Raina and TechCruiser. Moreover, it is well established that the parties and claims do not have to be identical for an antisuit injunction to issue. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (finding "substantial similarity" between the parties to the domestic and foreign litigation, even though one party was only a party to one of the two suits).

Similarly, Raina asserted a claim for defamation in the India Lawsuit that was not asserted in this case. However, a new claim asserted in the foreign litigation is considered sufficiently duplicative if it could have been asserted as a compulsory counterclaim in the original litigation under Fed. R. Civ. P. 13(a). *See Butte Mining PLC v. Smith*, 1994 U.S. App. LEXIS 12331, at *5 (9th Cir. 1994) ("[W]here a party seeks to litigate a compulsory counterclaim in a foreign country, and where the pursuit of such litigation could result in inconsistent rulings and the likelihood of unnecessary delay, substantial inconvenience and expense, the district court has the discretion to enter an injunction against the foreign proceeding."); *Umbro Int'l, Inc. v. Japan Prof'l Football League*, 1997 U.S. Dist. LEXIS 24371, at *6 (D.S.C. 1997) ("[T]he only claim asserted by the J. League in the Japanese litigation should have been asserted as a compulsory counterclaim under Fed. R. Civ. P. 13(a) in this case."); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004) (issues in different suits were "substantially similar").

Raina's defamation claim in the India Litigation is a compulsory counterclaim that should have been brought in this litigation. Raina's defamation claim is centered on letters Sindhi sent to

Raina's vendors and customers in November and December of 2016. Ex. A at 12. In addition to being baseless, this claim should have been brought as a compulsory counterclaim before the Final Judgment issued on October 27, 2017.

Federal Rule 13(a) requires that any claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" is a compulsory claim and must be asserted, or it will be deemed waived. Fed.R.Civ.P. 13(a). The Fifth Circuit has adopted the "logical relationship" test to determine if a claim is sufficiently related to the primary claim so as to be compulsory. *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir.1980). A logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Plant v. Blazer Financial Services, Inc*., 598 F.2d 1357, 1361 (5th Cir.1979). Raina's defamation claim involves the same facts decided by the Court in this litigation; namely, whether Raina and his employees misappropriated Sindhi's trade secrets and source code and used them to create TechCruiser. That factual dispute was being litigated in this Court for almost a year after Sindhi sent the letters. Thus, Raina was obligated to assert his defamation claim ***in this litigation*** pursuant to Fed. R. Civ. P. 13(a).

Finally, the concept of international comity should not prevent the issuance of an Antisuit Injunction. The Fifth Circuit does not elevate "principles of international comity to the virtual exclusion of essentially all other considerations." *Kaepa, Inc*., 76 F.3d at 627; *see also Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007) (noting a split in the circuits regarding the weight to afford international comity). The Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas Co*., 335 F.3d at 366. Moreover, it is well established that

"international comity concerns about issuing an antisuit injunction against foreign litigation are lessened when a case has already *proceeded to final judgment* on the merits in the domestic court." *Commercializadora Portimex S.A. De Cv v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 652 (E.D. La. 2005) (citing cases).[4]

Sindhi is suffering irreparable injury by being forced to go to the expense of litigating the same facts, in a different jurisdiction, while still attempting to preserve the Final Judgment and Final Injunction entered in his favor by this Court. Inconsistent judgments could result from duplicative litigation in India that would render worthless the orders of this Court. Raina should not be permitted to prevent Sindhi from enforcing this Court's Injunction.

**Conclusion**

For the foregoing reasons, Sindhi asks the Court to enjoin Raina, TechCruiser, and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them, from maintaining the India Litigation and/or causing to institute any other actions against Sindhi or Bulletlink in any jurisdiction that involves Raina's theft of Sindhi's Trade Secrets to create the TechCruiser CMS system.

---

[4] Indeed, Salim anticipates that the court in India will likely find an anti-suit injunction issued by this Court persuasive and will likely dismiss Raina's India Lawsuit as a result.

Respectfully submitted,

By: /s/ *Steven N. Williams*
**Steven N. Williams**
swilliams@mcdolewilliams.com
Texas Bar No. 21577625

**Zac Duffy**
zduffy@mcdolewilliams.com
Texas Bar No. 24059697

**MCDOLE WILLIAMS**
**A Professional Corporation**
1700 Pacific Avenue, Suite 2750
Dallas, Texas 75201
(214) 979-1122 - Telephone
(214) 979-1123 – Facsimile

**ATTORNEYS FOR PLAINTIFF**
**SALIM SINDHI**

CERTIFICATE OF CONFERENCE

The parties conducted a conference on January 16, 2017 between Zac Duffy and Ian Burke Perry. Mr. Perry confirmed that this motion is opposed.

*/s/ Zac Duffy*
Zac Duffy

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document is being served on all parties on January 17, 2017 via the Court's ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

/s/ *Steven N. Williams*
Steven N. Williams