IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SALIM I. SINDHI, §
§
Plaintiff, §
§ Civil Action No. 3:15-CV-3229-D
VS. §
§
KUNAL R. RAINA, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

Following the court's entry of a final judgment in this case, defendant Kunal R. Raina ("Raina") appealed the judgment to the Fifth Circuit and filed a lawsuit in India, alleging, *inter alia*, that plaintiff Salim I. Sindhi's ("Sindhi's") instant suit (hereafter referred to as "the *Sindhi I* suit") was frivolous. Sindhi now moves for issuance of a permanent injunction enjoining the prosecution of the India lawsuit, and Raina moves for a new trial under Fed. R. Civ. P. 60(b) in the *Sindhi I* suit. For the reasons that follow, the court grants in part and denies in part Sindhi's motion for a permanent injunction, and it denies Raina's motion for a new trial.

I

Because this case is the subject of a prior memorandum and order, *Sindhi v. Raina*, 2017 WL 4167511 (N.D. Tex. Sept. 20, 2017) (Fitzwater, J.) ("*Sindhi I*"), the court will recount only the background facts and procedural history that are pertinent to this decision.

Sindhi filed the *Sindhi I* suit against Raina, alleging claims for copyright infringement,

under 17 U.S.C. §§ 501-505, and for violating the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.002-005 (West Supp. 2016). After Raina twice failed to comply with orders of this court, the court struck Raina's responsive pleadings, including his motion to dismiss for lack of personal jurisdiction, on the basis that he had "repeatedly failed to comply with orders of this court after having been advised of the consequences of such failure." Nov. 8, 2016 Order at 1. The court also entered an interlocutory default judgment against Raina. Shortly thereafter, the court entered an interlocutory permanent injunction against Raina (it was interlocutory rather than final because it did not address all the relief that Sindhi sought).

In *Sindhi I* the court denied Raina's motion to overturn the interlocutory default judgment and granted Sindhi's motion for an order to show cause. Following an evidentiary hearing, the court entered a final judgment and permanent injunction. Raina has appealed the judgment, and the appeal is currently pending in the Fifth Circuit.

Shortly after filing the appeal of *Sindhi I*, Raina filed suit against Sindhi in India, alleging, *inter alia*, that the *Sindhi I* suit was frivolous and that Sindhi's correspondence with third parties regarding the court's permanent injunction was defamatory. Sindhi now moves for a permanent injunction enjoining Raina's India suit. Raina opposes the motion and moves under Rule 60(b) for a new trial in the *Sindhi I* suit.

II

The court turns first to Sindhi's motion for an antisuit injunction.

A

It is well-settled that "federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). "In assessing whether an injunction is necessary, [the court] weigh[s] the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction against the need to defer to principles of international comity." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003) (internal quotation marks omitted). "[A]ntisuit injunctions have been granted when foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations." *Kaepa*, 76 F.3d at 627 (citing *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 896 (5th Cir. 1970), *on reh'g en banc sub nom. In re Complaint of Unterweser Reederei, GmbH*, 446 F.2d 907 (5th Cir. 1971), *vacated sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). "[N]otions of comity do not wholly dominate [the Fifth Circuit's] analysis to the exclusion of these other concerns." *Karaha Bodas Co.*, 335 F.3d at 366. This court is not required "to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action." *Kaepa, Inc.*, 76 F.3d at 627.

Sindhi maintains that the India suit is duplicative because Raina's defamation claim

in that lawsuit is a compulsory counterclaim that he was required to bring in the *Sindhi I* suit. Raina responds that India suit is not oppressive because Sindhi chose to start his business in India and has filed multiple lawsuits in India.

When analyzing whether foreign litigation is vexatious or oppressive, the court considers "(1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is [duplicative] of the litigation in the United States." *Karaha Bodas Co.*, 335 F.3d at 366 (internal quotation marks omitted). The court will analyze the three factors in turn.

B

1

Regarding the first factor, "voluntary invocation of a foreign forum [by a party] . . . would militate against a finding that litigating a foreign action amounts to an inequitable hardship [against that party]." *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F.Supp.2d 645, 649 (E.D. La. 2005) (citing *Karaha Bodas Co.*, 335 F.3d at 368). Here, Sindhi initiated in India three separate legal proceedings of his own related to this case. The court thus holds that the first factor weighs against the issuance of a foreign antisuit injunction.

2

Regarding the second factor, the court finds this reasoning from *Commercializadora Portimex, S.A. de CV* to be persuasive:

> whether the foreign suit may delay an efficient determination, it is clearly inefficient to permit parties to thwart the finality of judgments by relitigating the same claims once they have been finally adjudicated. Although this factor is often examined in cases in which a party seeks [an] injunction to stop foreign litigation when another suit on the same claims is pending, efficiency concerns are no less implicated when a suit has gone to judgment, and the party who lost seeks to start the process all over again in another jurisdiction.

*Commercializadora Portimex, S.A. de CV*, 373 F.Supp.2d at 650. Here, the court has already entered a final judgment. Forcing Sindhi to relitigate the same factual issues in India would frustrate the efficient determination of his case.

3

Under the third factor, the court considers the extent to which the foreign suit is duplicative of the litigation in this court.

Sindhi relies on a decision of the Ninth Circuit that holds that "where a party seeks to litigate a compulsory counterclaim in a foreign country, and where the pursuit of such litigation could result in inconsistent rulings and the likelihood of unnecessary delay, substantial inconvenience and expense, the district court has the discretion to enter an injunction against the foreign proceeding." *Butte Min. PLC v. Smith*, 24 F.3d 245, 1994 WL 192428, at *2 (9th Cir. 1994). Although the Fifth Circuit has not explicitly adopted the compulsory counterclaim rule, the court finds the reasoning of this line of cases to be persuasive.

A compulsory counterclaim is any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 13(a). The Fifth

Circuit applies a logical relationship test, under which a counterclaim is deemed to be compulsory when "the same operative facts serve[] as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980) (citing *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). The court finds the compulsory counterclaim standard instructive in defining whether foreign litigation is duplicative and vexatious. *See Kaepa*, 76 F.3d at 628 n.14 (noting that antisuit injunction holding was consistent with purposes of Rule 13 to prevent multiplicity of actions). The court thus assesses whether the claims in the India suit bear a logical relationship to the claims in the *Sindhi I* suit. In doing so, the court merely applies the logical relationship standard and does not determine whether the India claims are compulsory counterclaims under Rule 13(a).

The pending India lawsuit includes a number of claims. It alleges that Abhijeet Bhausaheb Dighe ("Dighe"), a former employee of Bulletlink, experienced "tremendous agony, trauma, and emotional distress" as well as "irreparable damage to his public image as well as his career" when he was taken into police custody in February 2013 as a result of Sindhi's allegations that he had stolen Bulletlink's software. P. App. 3-4. The India suit also alleges defamation related to an article published in India in April 2013, which stated that Dighe had stolen Bulletlink's CMS Software. *Id.* at 4. It also avers that Sindhi seized and improperly held a hard drive from Dighe's computer. *Id.* The lawsuit alleges defamation stemming from a series of emails sent by Sindhi's attorney to clients of Techcruiser before

this court entered the final judgment in the *Sindhi I* suit. These emails informed the clients that Raina had illegally copied and misappropriated information from Bulletlink for his own competing business. They also alerted TechCruiser's clients that the United States District Court had entered an injunction against Raina and suggested that the clients switch to Bulletlink. The India suit complaint also alleges that Sindhi "acted recklessly and emailed the default order [to Google] which was not the final judgment," *id.* at 10; that, at an unspecified time, Sindhi hacked into Techcruiser's CMS and stole confidential information; and that the *Sindhi I* suit in the Northern District of Texas was frivolous and that Sindhi was forum shopping in an attempt to suppress competition and disrupt TechCruiser's business.

The court holds that the bulk of the claims pertaining to Raina in the India lawsuit are logically related to the claims in the *Sindhi I* suit.[1] The defamation claims by Raina against Sindhi relate to the same factual allegations underlying the *Sindhi I* suit: that Raina stole bulletlink.com CMS source code, trade secrets, and other confidential information to create a substantially similar competing CMS. The alleged defamatory nature of Sindhi's communications with clients regarding the *Sindhi I* suit and the court's orders rests ultimately on the veracity of the same factual allegations made in the *Sindhi I* suit. Raina could not litigate these claims in India without reopening the inquiry closed by this court in the *Sindhi*

---

[1]Raina maintains that Sindhi asserted in his response to Raina's motion to overturn default judgment that the actions in India did not involve the same issues in the *Sindhi I* suit. Sindhi's argument was made in the context of claim preclusion, which involves a different standard than the duplicative litigation standard. The court thus concludes that Raina's statements are inapposite to the question addressed here.

*I* suit.[2]

Raina also made a similar argument to his Indian frivolous litigation claim as part of his personal jurisdiction challenge in his motion to overturn the court's default judgment in the *Sindhi I* suit:

> Given that Sindhi chose to begin two separate legal actions in Indian Court prior to this case (including one which resulted in the nominal arrest of Raina, Exhibit 2 page 9) as well as filing a third Indian case while this case was underway, it appears to offend "traditional notions of fair play and substantial justice" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987), to then allow Sindhi, after having been unsuccessful in civil suits in India, to subject Raina to legal process in Texas over the same dispute.

D. Mot. to Overturn Default J. 15. The court thus concludes that Raina's frivolous litigation claim is also duplicative of the *Sindhi I* suit.

But other facts in the India lawsuit—such as those pertaining to Dighe—do not appear to be logically related to the claims in this lawsuit. Dighe's claims rest on incidents that did

---

[2]The court recognizes that it entered a final judgment in the *Sindhi I* suit due to Raina's default. Nevertheless, "[v]alid default judgments establish claim and defense preclusion in the same way as litigated judgments, and are equally entitled to enforcement in other jurisdictions." 18A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4422, at 229-230 (3d ed. 2004). Similarly, in the context of Rule 13(a), "courts have given default judgments full effect and have held that a counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits." 6 Wright & Miller, *supra*, § 1417, at 153; *see also Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766, 769 n.3 (5th Cir. 1977) (noting that it has been generally held under Rule 13(a) that failure to assert compulsory counterclaim in first action that has resulted in default judgment not tried upon merits precludes assertion of claim in subsequent action). The court thus does not weigh finality concerns any less because the *Sindhi I* suit was not litigated on the merits.

not arise from the *Sindhi I* suit, including his being taken into police custody and Sindhi's seizing his hard drive. And the court cannot conclude based on the present record that Dighe's defamation claim is duplicative of the factual issues in the *Sindhi I* suit because Sindhi has failed to demonstrate the absence of a substantial number of new facts relevant to Dighe's alleged misappropriation of Bulletlink source code.

Sindhi cites *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 654 (2d Cir. 2004), for the proposition that parties in domestic and foreign litigation need not be identical for an antisuit injunction to issue. In *Paramedics Electromedicina* the Second Circuit held that the foreign action was sufficiently similar to the domestic action even though the foreign action involved a defendant who was not party to the domestic action. The court based this conclusion on the fact that the additional defendant had an interest in the lawsuit based chiefly on its affiliation with a party to the original lawsuit. *See id.* at 652 (citing *Motorola Credit Corp. v. Uzan*, 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003)) (holding there was sufficient similarity between parties, even though not all parties to the two actions were identical, because "the real parties in interest are the same in both matters"). In the present case, unlike in *Paramedics Electromedicina*, Sindhi has not provided argument or evidence that Dighe is not a real party in interest in the India lawsuit. The factual allegations involving Dighe, including the emotional distress claim and the defamation claim, appear to concern him personally, not purely as an agent of Techcruiser or as a business associate of Raina. The court thus concludes that Dighe's claims in the India lawsuit are not duplicative of the claims in this

lawsuit.

Finally, Raina's other claim against Sindhi for hacking into TechCruiser's CMS is based on an unspecified time period and ambiguously pleaded facts. Accordingly, the court is unable to conclude that it is duplicative of the *Sindhi I* suit.

C

Sindhi posits that international comity concerns do not weigh against issuing the antisuit injunction. Raina responds that the present Indian lawsuit is brought by Indian nationals in India's own courts and that many incidents relevant to the lawsuit occurred in India.

Certain facts in this case implicate international comity concerns. The present *Sindhi I* suit has not "been long and firmly ensconced within the confines of the United States judicial system[.]" *Kaepa*, 76 F.3d at 627. In *Kaepa* the court held international comity concerns were not present because

> [defendant] consented to jurisdiction in Texas; stipulated that Texas law and the English language would govern any dispute; appeared in an action brought in Texas; removed that action to a federal court in Texas; engaged in extensive discovery pursuant to the directives of the federal court; and only then, with the federal action moving steadily toward trial, brought identical claims in Japan.

*Id*. This case differs from *Kaepa* because Sindhi took legal action in India before he filed the *Sindhi I* suit in Texas in 2015. The court thus cannot conclude that this lawsuit has been confined to the United States judicial system.

On the other hand, this case is purely private—a contractual dispute between private

parties—and does not involve the government of any foreign nation as a party. *Cf. Karaha Bodas Co.*, 335 F.3d at 372 (holding there was international comity concern where one party was wholly owned by government of Indonesia). It also does not relate to any public international issues. *See id.* at 371 ("[The Fifth Circuit has] impliedly recognized the importance of comity when a case implicates public international issues and when prior steps in resolving a dispute have taken place in international fora.").

Moreover, this court has a strong interest in protecting its jurisdiction and its judgments against collateral challenge through foreign judicial systems. *See Commercializadora Portimex, S.A. de CV*, 373 F.Supp.2d at 652 (citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927-28 (D.C. Cir. 1984) (once court reaches a judgment, "a court may freely protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation"). And here, Raina has already invoked the appellate process available through the U.S. court system.

Accordingly, the court holds that any international comity concerns in this case do not outweigh the duplicative nature of aspects of the India lawsuit and this court's interest in preserving its jurisdiction. Nevertheless, considering the role the Indian judicial system has had in this dispute, the court declines to issue an overly broad injunction against the parties bringing the India lawsuit.

D

For the reasons explained, the court enjoins the parties to the Indian lawsuit from bringing the claims in that lawsuit, except for the following claims that are not enjoined:

Dighe's claims, including his emotional distress claim, his defamation claim, and his allegations that Sindhi improperly held his hard drive; and the allegation that Sindhi hacked into the TechCruiser CMS and stole confidential information.

III

The court now turns to Raina's Rule 60 motion for relief from judgment.

As noted, Raina has appealed the court's judgment. It is well settled that the filing of a notice of appeal divests the court of jurisdiction over any matter involved in the appeal. *See Alvestad v. Monsanto Co.*, 671 F.2d 908, 911 n.2 (5th Cir. 1982); *Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 997-98 (5th Cir. 1988). A district court is authorized to *deny* Rule 60(b) relief while an appeal is pending, but it may not *grant* such relief without obtaining leave from the court of appeals. *See Willie v. Cont'l Oil Co.*, 746 F.2d 1041, 1046 (5th Cir. 1984), *on reh'g*, 784 F.2d 706 (5th Cir. 1986) (en banc). A relatively recent procedural innovation—Rule 62.1(a)(3)—authorizes a district court to issue an indicative ruling, "stat[ing] either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[3]

---

[3]Rule 62.1(a) provides:

> Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Because Raina has not established that he is entitled to relief under Rule 60(b), the court exercises its authority under Rule 62.1(a)(2) to deny the motion.

\* \* \*

Accordingly, for the reasons explained, the court grants in part and denies in part Sindhi's motion for the issuance of a permanent injunction of the India lawsuit, and it denies Raina's motion for a new trial in the *Sindhi I* suit.

**SO ORDERED**.

April 26, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE